## MILLER v. TRAVELERS INS. CO. OF HARTFORD, CONN.
### No. 5516.

Circuit Court of Appeals, Seventh Circuit.
Dec. 14, 1935.

John A. Bloomingston, of Chicago, Ill., for appellant.

Weymouth Kirkland, Jay Fred Reeve, and William H. Symmes, all of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and STONE, District Judge.

EVANS, Circuit Judge.

A similar case between the same parties, but on a different policy with a similar clause against suicide, was before us on a previous appeal. 62 F.(2d) 910. Reference is made to the facts there set forth.

The judgment in the instant case was based upon a directed verdict. The court took the case from the jury because it was convinced that the insured committed suicide. Whether the evidence presented a jury question upon the issue of accidental death is the single question before us.

In disposing of the case, Judge Woodward said:

"In all essential respects, however, the evidence on this trial is not other and different than that received on the former occasion.

"The plaintiff depends for recovery largely on the presumption against self-destruction and on attacking the story of Adamson. Other than Adamson there were no eye-witnesses of what occurred

at the time Walter Miller went through the window. Some evidence has been offered, however, tending to show that Adamson could not have seen the occurrence which he relates at length in his testimony.

"But the physical facts surrounding the death of Walter Miller are in evidence. These physical facts are the same as in the former trial. It is undisputed that Walter Miller went out of the south window in his semi-private room on the twelfth floor of the Insurance Exchange Building.

. "A replica of the window, together with a radiator which the evidence shows is an exact duplicate of the radiator in front of Miller's window at the time of the occurrence were admitted in evidence. * * *

"Other than the impeachment of the testimony of Adamson the evidence in this case is the same as on the former trial. Adamson's testimony may be rejected in its entirety leaving the undisputed physical facts which the Court of Appeals say

" 'Conclusively negatived appellee's (plaintiff's) theory that Miller fell through the window.'

"From the evidence here presented the court believes that there is no issue for the jury. Obedient, as the court believes, to the views of the Court of Appeals as expressed in its opinion on the former appeal, the court finds as a matter of law that the plaintiff cannot recover. The Court would add that its careful inspection of the window, leads it to the same conclusion as expressed by the Court of Appeals."

■ While this appeal is governed by the law of the case,[1] which the trial court properly applied, we have re-examined the testimony to satisfy ourselves as to the correctness of the conclusion by us reached on the previous trial.

■ The record before us contains a blank page. It was to have been filled with the story of Reed, whose testimony we held on the previous appeal was admissible. But Reed did not testify. In view of our previous ruling Reed's silence on the last trial is most significant. Its implications are irrefragable. The status of Reed in the Miller family placed him outside the possible charge hurled at Adamson, of being a perjurer. Reed was a relative and an intimate of the insured and his family. Adamson stated that Reed suggested that he omit from his testimony before the coroner that which might hurt (without benefiting anyone else) the widow and other members of the family of the insured. On the previous trial appellant succeeded in excluding Reed's testimony. On this last trial the same result was accomplished through a doctor's certificate of illness. (He went to his bed the night before his testimony was to be given with a threatened attack of the grippe.) Reed's absence under the circumstances made appellant's attack on Adamson weaker on this last trial than on the first.

Adamson's account of Miller's going through the window was attacked because at the inquest he left out that part of the story which described the "jumping through the window" and the words spoken by Miller as he did so. Adamson said he left out this part of the story at the suggestion of Reed; that he did so to save the family's name and avoid needless hurt to Miller's wife, aged parents, and little children; and that insurance claims where suicide was a defense would not be presented.

If this explanation were untrue, Reed could and doubtless would have denied it. He did not do so. At both trials appellee, over objection, endeavored to get Reed's testimony before the jury. It failed. Appellant may have excused her action on the previous trial on the ground the testimony was objectionable. On the last trial, however, there was no such excuse. The only inference deducible from Reed's silence is that Reed's story coincided with Adamson's.

This discussion might be extended to the statements of the witnesses called on the last but not on the previous trials, which dealt with Adamson's story. We are not, however, interested in merely ascertaining the similarity of the testimony on the two trials, so far as the Adamson story is concerned. The determinative facts in the case were the physical facts. They were controlling. As to them there was absolutely no difference in the testimony on the two trials. The location, height, length, and breadth of the windows, the location

[1] International Brotherhood, etc., v. Western Union Tel. Co. (C.C.A.) 46 F. (2d) 736; Luminous Unit Co. v. Freeman-Sweet Co. (C.C.A.) 3 F.(2d) 577; Cyclopedia of Federal Procedure, Longsdorf, § 2975, and cases there cited; 2 Ruling Case Law, "Appeal and Error," §§ 187, 188, p. 223.

of the radiator, the thickness of the wall, and the position of the broken glass—all confirm the conclusion expressed by this court on the previous hearing.

Counsel has brought out the full strength of appellant's case. We are, however, unable to concur in his conclusions. Convinced that the evidence would not permit a jury's verdict which found the death was accidental, to stand, we approve of the action of the court in meeting and assuming the responsibility which was his.

The judgment is affirmed.